**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CHARMMORCUS HOLLOWAY, SR.**                                                                    **PLAINTIFF**
**ADC # 26344-009**


VS.                                                    4:08-CV-00821-GTE


**WES LOTT,** *et. al.*                                                                                              **DEFENDANTS**


## ORDER GRANTING SUMMARY JUDGMENT

This action arises out of the lawful arrest of Charmmorcus Holloway during which Holloway was bitten multiple times by a K-9 police dog, Gino. Holloway brings suit under 42 U.S.C. § 1983 contending that police officers Wes Lott, Jason Harris, Macrice Sanders and Alison Walton used excessive force against him in violation of the Fourth, Eighth, and Fourteenth Amendments. Defendants have moved for summary judgment.[1] Plaintiff has filed a response opposing the motion.[2] For the following reasons, the Court concludes that Defendants are entitled to judgment as a matter of law.

**I.   FACTS**

The following facts are undisputed unless otherwise noted.

Although Holloway's claims stem from his arrest on May 8, 2008, the events leading to his arrest began the preceding day, when he was arrested on Forgery and Theft of Service charges and held pending an initial court appearance. On the morning of May 8th, Defendant Walton transported Holloway, along with other pretrial detainees, to Little Rock District Court for his initial appearance. At approximately 9:40 a.m., Walton was informed that Holloway had exited the court building.

---

[1] Doc. No. 95. Additionally, Defendants supplemented their motion to provide records showing the disposition of criminal charges against Plaintiff filed as a result of the incident about which Plaintiff complaints in this lawsuit. See Doc. No. 110.

[2] Doc. No. 105.

Although Walton completed an incident report detailing Holloway's escape from custody, she had no further contact with him on May 8th.

Jason Harris was on duty in his patrol car with his K-9, Gino, when he heard a radio broadcast that a black male, date of birth 5/25/1977, had escaped from custody. A second broadcast stated that the suspect was believed to be driving a brown Jaguar in the Timberview area near Stagecoach Road in Little Rock. Harris responded to the call and began searching for the suspect. Officer Harris observed a Jaguar driven by a black male with dreadlocks, all of which was consistent with the escapee's description. Officer Harris activated his lights and siren[3] in an effort to pull over the vehicle, which in fact was being driven by Holloway. Holloway drove away. Harris began pursuing Holloway. Officer Bryan Eshenbaugh, after hearing a radio broadcast about Harris's pursuit, checked in as the backup unit, activated his siren and lights, and assisted Harris in the chase.

The pursuit lasted approximately five minutes. Present with Holloway in the vehicle were his fiancee, MaShan Lee, and his two small children, one-year and five weeks in age. The entire car pursuit was captured by a mobile video recorder in Harris' patrol car. The video is part of the record.[4]

Holloway states that upon seeing the lights flashing on Officer Holloway's patrol car, he pulled over, rolled his window down and pointed for the officer to follow him back to his house, allegedly for the safety of his fiancee and kids. A review of the tape provides no support for this contention. Holloway also claims that he drove carefully and obeyed all traffic laws during the pursuit.[5] This contention also is proven false by a review of the video in which Holloway can be seen driving erratically, running approximately 7 stop signs and a red light. From a review of the

---

[3]Holloway appears to dispute whether Harris initially turned his siren on. This dispute is immaterial since Holloway, by his own admission, knew that Harris had activated his lights and was trying to pull Holloway over.

[4]Doc. no. 98.

[5]Holloway also contends that at one point during the pursuit his fiancee's purse "flue [sic] out the window with her empty medication needing to be refilled." Affidavit, doc. no. 27 at p. 8.

tape, there is no genuine dispute that any reasonable officer in Harris's place would have viewed Holloway's conduct in fleeing as unlawful and the manner in which he operated the Jaguar as threatening to the safety of others.

The vehicle pursuit ended when Holloway pulled the Jaguar into the driveway of a residence at 5420 Timberland Drive.[6] Officer Harris and his police K-9, Gino, ran to the driver's side door of the Jaguar. At this point, Plaintiff and Defendant's version of the facts differ markedly. Plaintiff claims he suddenly became absolutely fully compliant with the officer's orders. He states that he turned his car off, opened the door, fell to the ground, surrendered with his face down and hands behind his back, and requested that he be cuffed. He claims that Harris told Gino to get him and the officers laughed and watched as Gino repeatedly bit him. Defendants claim that Holloway refused Harris's repeated verbal commands to turn the car engine off and to get out of the car. Defendants further claim that Holloway attempted to put the car into gear to escape again at which point, Harris opened the driver's side door of the Jaguar and told Gino to "stop him."

The parties dispute whether Holloway was resisting arrest. According to the officers, after Holloway exited the vehicle, he attempted to flee. A struggle then ensued to subdue Holloway so that he could be handcuffed.[7] Defendants indicate that it took five officers, OC spray (a chemical irritant), and 2 pairs of handcuffs (due to Holloway's large size), to secure Holloway's arrest.

After he was arrested, Holloway was taken to University of Arkansas for Medical Sciences, where he was treated for his dog bites and released. Holloway previously submitted the patient instructions he was given on his release, which indicate that he was told to take tylenol or ibuprofen for pain and given a prescription for flagyl, an antibiotic used to treat bacterial infections. Holloway also submitted pictures of his injuries, apparently taken shortly after the incident. The pictures show

---

[6]At this point, Holloway and the Jaguar are out of the line of sight of the video recorder in Harris's patrol car.

[7]Each of the Defendants has submitted an affidavit. See Exhibits C, D, F, and G to Defendants' motion for summary judgment, doc no. 95.

what appear to be dog bite injuries on Holloway's arm(s) and legs. Construing the pictures liberally, they show several distinct areas of broken skin.[8]

As a result of his May 8th arrest, Holloway was charged with Battery in the Second Degree (Police Officer); Felon in Possession of a Firearm; two counts of Endangering the Welfare of a Minor; Escape in the First Degree; Fleeing; Resisting Arrest; and six counts of stop sign violations. Following a jury trial, Holloway was convicted of fleeing, two counts of endangering the welfare of a minor (1st and 2nd degree) and escape (3rd degree). He was acquitted of the battery and resisting arrest charges. For his convictions, Holloway was sentenced to 360 months in the Arkansas Department of Corrections.

Although the state court felon in possession charge was dropped, Holloway was charged in federal court with being a felon in possession. The gun in question was apparently found in the trunk of the Jaguar following Holloway's May 8th arrest. He pled guilty to the charge and was sentenced by U.S. District Judge Brian S. Miller to 30 months imprisonment.[9]

Holloway contends that he suffered permanent injuries, including nerve damage,[10] as a result of the dog bites. He seeks an award of money damages and brings suit against the officers in their personal and official capacities.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

---

[8]Because the pictures are extremely poor in quality, the Court can not be certain of the number of bites.

[9]*United States v. Holloway*, United States Eastern District of Arkansas Case No. 4:08-cr-00358-BSM-1.

[10]Of course, if this case proceeded to trial, Holloway would need to present expert medical testimony in order to recover compensation for permanent damages.

-4-

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

#### A. No facts to support official capacity claims

Plaintiff's claims against the Defendants in their official capacities are, in effect, claims against the City of Little Rock. See *Parrish v. Luckie*, 963 F.2d 201, 203 n. 1 (8th Cir. 1992). "A city cannot be held liable under § 1983 unless [plaintiff] prove[s] the existence of an unconstitutional municipal policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). Plaintiff does not appear to allege and, in any event, has failed to present any proof to show that the excessive force was due to a municipal policy or custom. *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Accordingly, Plaintiff's official capacity claims must be dismissed.

#### B. The Fourth Amendment Governs Plaintiff's Excessive Force Claim

The law is clear that excessive force claims during the course of an arrest must be pursued under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). Accordingly, Plaintiff's Eighth Amendment fails and the Court evaluates Plaintiff's claims solely under the Fourth Amendment, which applies to states through the Fourteenth Amendment.[11] *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (recognizing that Fourth Amendment applies to the states through the Fourteenth Amendment), *cert denied*, 540 U.S. 961 (2003).

---

[11]The Court reads Plaintiff's Complaint as referencing the Fourteenth Amendment solely for this purpose and not in an effort to state a separate due process claim under the Fourteenth Amendment. In any event, if Plaintiff "cannot win his case under Fourth Amendment standards, it is a certainty that he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standard that must be met to establish a Fourteenth Amendment substantive due process claim." *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000) (holding Fourth Amendment analysis appropriate to analyze claim of excessive force by arresting officer after taking plaintiff into custody but before first appearance before a neutral judicial officer).

C.    **Claim against Officer Watson**

The undisputed facts show that Officer Waton was not present at the time of Holloway's arrest. The claim against her is therefore dismissed.

D.    **Analysis of remaining claims**

The Court evaluates Holloway's remaining individual capacity claims against Defendants Lott, Sanders and Harris.[12] The sole factual basis for Holloway's claim appears to be that the officers unlawfully permitted Gino to bite him after he had already surrendered to their lawful authority.

"A § 1983 claim for apprehension by force, deadly or not, constitutes a seizure subject to the Fourth Amendment," and the test is whether the seizure "was objectively reasonable" under the Fourth Amendment. *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002) (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)). A court must consider the totality of the circumstances at the time of the seizure when examining whether an officer's actions are "objectively reasonable." *Graham v. Conner*, 490 U.S. 386, 397 (1989). In a Fourth Amendment context, determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id*. at 396.

There is no genuine dispute that the officers who apprehended Holloway were dealing with a suspect who posed an immediate threat to their safety. Holloway had refused to submit to their lawful authority during the car chase. The officers had been advised that Holloway had escaped from custody and they had reason to believe that he was armed.

Some of Holloway's assertions are contradicted by the record. For example, he clearly did not, as he contends, abide by all traffic laws when he led the police on a car chase. Nor does it

---

[12] The Court rejects Holloway's request in his summary judgment response to add the following new parties: Gino the dog, Stuart Thomas, Dennis Hutchins, and Bryan Eshenbaugh. The request is untimely and Holloway does not indicate why he wishes to add these parties. Gino is not a "person" and can not be sued under 42 U.S.C. § 1983. Further, for the reasons stated in rejecting Holloway's remaining claims, the addition of these additional party Defendants would be futile.

appear that Holloway, as he contends, motioned for Harris to follow him after Harris attempted to pull him over.[13] Of course, the Court is not required to accept such testimony. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Holloway's assertion that he immediately shut off his engine, exited the vehicle and lay face down with his hands behind his back is contrary to all other testimony. Officer Lot and Eshenbaugh state that they observed Holloway running from the vehicle and being chased by Officer Harris and Gino on foot. Officers Harris, Eshenbaugh, Sanders, and Lott all state that Holloway actively resisted their efforts to place him in handcuffs, that a long ground struggle resulted, and that it took the group of officers, working together, to get handcuffs on Holloway.

Although the Court is required to view the facts in a light most favorable to Holloway, as the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." *Reed v. City of St. Charles, Mo.*, 561 F3d 788 (8th Cir. 2009) (omitting citation and internal quotations). Further, disputes of fact will not prohibit the entry of summary judgment unless the disputes are genuine.

In *Reed*, the Eighth Circuit affirmed the district court's grant of summary judgment against a plaintiff alleging that police officers used excessive force in arresting him. Reed had fled the scene of a domestic disturbance. Officers found him in a nearby yard. While the officers contended he was hiding, Reed contended that he was not hiding but was merely waiting for them to arrest him. While the officers contended Reed resisted arrest and that force was required to take him into custody, Reed contended that he immediately surrendered by lying face down with his hands behind his back.

Despite the disputed issues of fact, the *Reed* court affirmed the district court's ruling that there were no genuine issues of material fact. *Id*. at 791. The Reed court stated:

---

[13]The Court can take judicial notice that his fiancee's purse did not, as Holloway suggests, fly out of the car on its own during the car chase.

> If opposing parties tell two different stories, the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party – as long as those facts are not so blatantly contradicted by the record . . . that no reasonable jury could believe them. A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy. In sum, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.

*Reed*, 561 F.3d at 790-91 (omitting citations and internal quotations).

This case, like *Reed*, involves a dispute over whether Holloway cooperated with the arresting officers and obeyed their orders. Holloway, like the plaintiff in *Reed*, offers nothing to support his allegations other than his own unsupported and self-serving testimony. Although Holloway indicates his fiancee and his brother witnessed the officers' use of excessive force, he has not submitted a sworn statement from either of these witnesses. Instead, he argues that if he had actually done the things the officers testified to that he would have been shot. This argument is no substitute for evidence from which a jury could find that the officers acted unreasonably in securing his arrest.

Arguably, this record, like that in *Reed*, would justify the Court in rejecting completely Holloway's unsupported self-serving allegations that he suddenly began cooperating fully and obeying all orders of the police after the car pursuit ended. It is not necessary to do so, however. The Court will assume, as Holloway contends, that he attempted to surrender when he exited the vehicle. However, this does not mean, as Holloway suggests, that any use of force thereafter was excessive. Holloway himself acknowledges that he only had one handcuff on for a period of time during which Gino had him in a hold. He also acknowledges that at one point he sat up and grabbed Gino by the collar. Holloway states that he was yelling at the officers to cuff him and to get the dog off of him. Assuming such is true, this does not mean that the dog bites he suffered after he made his intent to surrender known were objectively unreasonable. With respect to criminal apprehension,

Gino is trained to "hold" his bite on a fleeing suspect until officers can secure custody of the suspect.[14] The bites that Holloway sustained are consistent with those of a fleeing suspect.

The case is similar to *Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009). In *Johnson*, a police officer and his police dog were chasing a fleeing suspect on foot when the suspect, encountering a fence, turned around, put his hands in the air, and said, "I give up." *Id*. The police dog grabbed the suspect's left arm. The officer viewed the suspect's efforts to get away from the biting police dog as resistance and struck the suspect several times in an effort to subdue him. *Id*. Like this case, there was no allegation that any force was used after the suspect was placed in handcuffs. *Id*. at 660.

The district court granted summary judgment based on its finding that the amount of force the officer used was reasonable as a matter of law. *Id*. The court noted that the officer reasonably believed that the suspect might be armed and that the suspect was attempting to evade arrest. *Id*. While recognizing the general principle that "a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders," the court recognized that such principle "depends critically on the fact that the suspect is indeed subdued." *Id*. The Court then observed:

> Scott [the officer] had no idea how Johnson [the suspect] was going to behave once he was cornered. No law that we know of required Scott [the officer] to take Johnson's apparent surrender at face value, a split second after Johnson stopped running. Until he encountered a fence that was too high for him to jump over, Johnson had used every method at his disposal to flee from police. The surrender also did not establish that Johnson was unarmed. A reasonable officer could think that the use of the dog was necessary to help control Johnson; otherwise, Johnson might have had the time he needed to retrieve and use a weapon . . . In short, Scott's use of force – in the form of [the police dog] – to subdue Archer was objectively reasonable, given the uncertainties in the situation that faced him.

*Id*. at 660-61.

---

[14]The undisputed evidence shows that Officer Harris and Gino successfully completed the certification standards required of both narcotics and police service (patrol) dogs in September of 2004 and were re-certified annually after that time.

Assuming that Holloway intended to surrender after exiting the Jaguar and that he made his intent known by laying face down on the ground with his hands behind his back, that does not mean that he was subdued and that the police were required to immediately cease use of all force. The situation the police confronted was dynamic and dangerous. They had good reason to believe that Holloway, who had reportedly escaped from custody, was armed and dangerous. Holloway had demonstrated that he had no respect for their lawful authority, as evidenced by the car chase he led them on only moments earlier. The police were entitled to use reasonable force to protect themselves and others until the point at which Holloway was in handcuffs. The Court concludes that Harris's use of Gino to "bite and hold" Holloway until the officers handcuffed him was objectively reasonable.

It is undisputed that Harris alone controlled Gino during the events in question. Although Officers Lott and Sanders were present at the scene, it is undisputed that their only role was in assisting the other three officers present at the scene in handcuffing Holloway. Plaintiff alleges in a general fashion that the officers laughed and allowed Gino to continue biting him. These allegations, in light of the entire record, are clearly not sufficient to permit a jury finding in Plaintiff's favor on his excessive force claims against Lott and Sanders.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, at 396. The protection of the Fourth Amendment is a fluid concept. The degree of the protection varies by circumstance. The need for some force was set in motion by Holloway's own unlawful conduct. The degree of force used in this case does not offend the Fourth Amendment.

**IV.    CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (Doc. no. 95) be, and it is hereby, GRANTED. Judgment will be entered separately.

IT IS FURTHER ORDERED THAT Defendant's Supplement to Motion for Summary Judgment (Doc. no. 110), which is not a separate motion, be removed as a pending motion.

IT IS SO ORDERED this  3rd  day of February, 2011.

                                              _/s/Garnett Thomas Eisele_____
                                              UNITED STATES DISTRICT JUDGE